NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAHMON RICHARDSON, *Plaintiff*, v. CITY OF NEWARK, et al., *Defendants*. | Civil Action No. 16-265<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

The allegations in this case stem from an unfortunate encounter between Plaintiff and Newark police officers on November 6, 2013. Plaintiff alleges that he sustained injuries when Officer Laurie shot him in the leg without justification after a protracted pursuit. Plaintiff asserts claims against Officer Laurie and the City for violations of federal and state civil rights laws and state law tort claims.

Before the Court is a Motion for Summary Judgment filed by Defendants City of Newark (the "City") and Neil Laurie ("Officer Laurie" or, together with the City, "Defendants") against Plaintiff Rahmon Richardson ("Plaintiff"), and a Cross-Motion for Partial Summary Judgment filed by Plaintiff. For the reasons expressed herein, Defendants' Motion is **GRANTED** and Plaintiff's Cross-Motion is **DENIED**.

**I.    FACTS AND PROCEDURAL HISTORY**

  **A.  The Stop**

While patrolling on November 6, 2013, Newark Police Officer Neil Laurie approached a group of men in the area of Frelinghuysen Avenue and Van Vechten Street. See Defendants'

1

Statement of Undisputed Material Facts ("SOMF")[1] ¶ 1, ECF No. 117.3; Transcript of Suppression Hearing, Apr. 20, 2015 ("Suppression Tr.") at 4:24-7:22, ECF No. 117.7.  One of the men was later identified as Plaintiff Rahmon Richardson.  See SOMF ¶ 1.  Officer Laurie claims that he "saw a bulge" in Plaintiff's jacket, "grab[bed]" the bulge, and "knew immediately it was a handgun."  Suppression Tr. at 12:6-13:13; SOMF ¶ 4.[2]  Plaintiff ran away before Officer Laurie was able to obtain his identification information.  SOMF ¶ 5.  He fled to avoid arrest for an outstanding warrant, which would have resulted in a violation of his parole for armed robbery.  Id. ¶ 6.

Officer Laurie and another officer pursued Plaintiff on foot.  Id. ¶ 7.  During the pursuit, the officers yelled, "stop, police," and "gun."  Id. ¶¶ 9, 11.  Plaintiff did not stop.  See id. ¶ 12.  He did not speak to the officers until he was later subdued.  Id. ¶ 8.  Officer Laurie was separated from his partner during the pursuit.  Id. ¶ 12.  Officer Laurie finally caught up to Plaintiff in an alleyway between a chest-high fence and a three-family home.  Id. ¶¶ 12-13.  Plaintiff stood near the home while Officer Laurie stood in the street on the other side of the fence.  See id. ¶ 13.  Officer Laurie pointed his firearm at Plaintiff and ordered, "[s]how me your hands," and "[d]on't move."  Id. ¶ 14.  Plaintiff initially complied.  Id. ¶ 15.  Officer Laurie began to walk around the fence and speak to dispatch.  Id.  As he approached Plaintiff, Officer Laurie tripped over the curb.  Id.

---

[1] Facts derived from the SOMF are undisputed unless otherwise noted.  Where facts in a party's statement are supported by evidence in the record and denied by the opposing party without citation to conflicting evidence, the Court deems such facts undisputed.  See Fed. R. Civ. P. 56(e)(2)-(3); Carita v. Mon Cheri Bridals, LLC, No. 10-2517, 2012 WL 2401985, at *3 (D.N.J. June 25, 2012).

[2] Plaintiff disputes this fact and claims that he was never in possession of a firearm on that date.  Plaintiff's Response to Defendants' Statement of Material Facts ("RSOMF") ¶ 4, ECF No. 123.1.

### B. The Shooting

After Officer Laurie stumbled, Plaintiff "took off again" to the side door of the home, located in the alleyway. Id. ¶ 16. Plaintiff put his hand on the doorknob, but he could not get inside because it was locked. Id. ¶ 17. As Officer Laurie ran around the fence toward Plaintiff, Laurie slipped and fell onto his hands and knees. Id. ¶ 18. Plaintiff heard Officer Laurie curse, and the two stared at each other. Id. ¶ 19. Officer Laurie then shot his firearm, but Plaintiff was not hit. Id. ¶¶ 19, 21-22.

Plaintiff crouched down, turned back toward the side door, and entered the home by "ramm[ing] his shoulder into [the door]" and "breaking the lock." Id. ¶ 23. The door closed behind Plaintiff as he entered the basement apartment. Id. ¶ 24. Plaintiff approached another door in the same room, which led to a stairwell that gives access to the other apartment units. Id. ¶¶ 26, 28-29. Plaintiff tried to squeeze his hand in the crack of the locked door to pull it open. Id. ¶ 32. While this was going on, Officer Laurie kicked the side door open and saw Plaintiff attempting to force the second door open. Id. ¶¶ 32-33, 35-38. After Plaintiff began to successfully open the second door, Officer Laurie, "concerned that Plaintiff was trying to break into another apartment," shot Plaintiff in the leg. Id. ¶¶ 36, 38-39. Plaintiff tried to continue fleeing, but his leg gave out. Id. ¶ 40. Officer Laurie yelled at Plaintiff to "get down." Id. ¶ 41. Plaintiff ultimately fell to the floor and Officer Laurie handcuffed him. Id. ¶¶ 42, 44. Plaintiff was transported to the hospital for treatment. Id. ¶ 52.

The entire pursuit lasted approximately two minutes. Id. ¶ 45. The encounter at the home—from when Officer Laurie caught up to Plaintiff until when Plaintiff was shot in the leg—lasted forty seconds or less. Id. ¶ 46.

### C. The Investigation

Laurie subsequently recovered a firearm outside the side entrance of the home. Id. ¶ 47.[3] The Essex County Prosecutor's Office ("ECPO") investigated the shooting. Id. ¶ 48. The investigation revealed that the three-family home was Plaintiff's "secondary address," where he stayed with his girlfriend. See id. ¶ 53; Transcript of Plaintiff's Deposition, September 11, 2017 ("Pl.'s Dep."), at 21:6-22:11, ECF No. 117.10. ECPO detectives recovered a bag of ammunition from the basement apartment. Id. ¶ 55. In the stairwell, detectives found a shotgun wrapped inside Plaintiff's rug. Id. ¶ 56. Detectives also discovered a bulletproof vest in Plaintiff's bedroom closet. Id. ¶ 58.

### D. Plaintiff's Criminal Case

On July 3, 2014, an Essex County Grand Jury returned an indictment that charged Plaintiff with firearms offenses, obstruction of justice, resisting arrest, and aggravated assault. See id. ¶ 64. On November 10, 2014, Plaintiff moved to suppress the firearm. Id. ¶ 65. After an evidentiary hearing, the trial court granted the motion in a written opinion. Id. ¶¶ 68-70, 72. The trial judge concluded that Officer Laurie's initial stop-and-frisk of Plaintiff was unlawful and suppressed the firearm as fruit of the poisonous tree. Id. ¶ 75.

On November 16, 2015, Plaintiff pled guilty to a disorderly persons offense of obstruction of justice pursuant to a plea agreement. Id. ¶ 77; see Plea Hearing Transcript ("Plea Tr.") at 5:17-6:18, ECF No. 117.6.

### E. Procedural History

Plaintiff filed a Complaint against the City, Officer Laurie, Sergeant Rowe Thomas, John Does 1-10, and Robert Does 1-10. Compl., ECF No. 1.1. Against the individual defendants,

---

[3] Plaintiff disputes that the gun belonged to him. RSOMF ¶ 47.

Plaintiff alleged violations of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983-1986 (Counts One and Four), and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 ("NJCRA") (Count Seventeen), and asserted a claim for punitive damages (Count Two) and state law tort claims for assault and battery (Counts Six and Seven), intentional and negligent infliction of emotional distress (Counts Eight and Nine), negligence (Counts Ten and Eleven), and false arrest (Count Thirteen). See id. Against the City, Plaintiff alleged violations of the Civil Rights Act, 42 U.S.C. §§ 1983-1986 (Counts Three and Five), and the NJCRA (Count Seventeen), punitive damages (Counts Twelve and Fifteen), and the aforementioned state law tort claims under the doctrine of respondeat superior (Counts Fourteen and Sixteen). See id.

Currently pending before the Court are Defendants' Motion for Summary Judgment[4] and Plaintiff's Cross Motion for Partial Summary Judgment on the issue of Monell liability. ECF Nos. 117, 123 at 27-33.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). The Court must "view all facts and draw all reasonable inferences in favor of the non-moving party."

---

[4] By Order dated September 13, 2016, this Court dismissed Plaintiff's § 1986 and punitive damages claims. ECF No. 12. The claims against Defendant Thomas Roe (incorrectly pleaded as Rowe Thomas) were voluntarily dismissed on November 11, 2017. ECF No. 46.

See Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn., 555 U.S. 271, 273 n.1 (2009).

## III. ANALYSIS

### A. Civil Rights Claims—§ 1983, § 1985, and the NJCRA

#### 1. Against Office Laurie

Plaintiff asserts that Officer Laurie violated 42 U.S.C. § 1983[5] and the New Jersey Civil Rights Act[6] when he shot Plaintiff in the leg. He also alleges that Officer Laurie conspired with other officers to violate his civil rights in contravention of 42 U.S.C. § 1985. Officer Laurie argues that he is protected by the doctrine of qualified immunity because Plaintiff was "an armed suspect" who "repeatedly ignored his commands," "was seemingly attempting to break into someone's home," and "made sudden movements." Defs.' Br. at 19-20, ECF No. 117.2. For the reasons that follow, the Court finds that Officer Laurie is entitled to qualified immunity.[7]

---

[5] Plaintiff's Complaint alleges that the shooting violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Compl. ¶ 13. However, the constitutional violation Plaintiff alleges—use of excessive force—constitutes an unlawful seizure in violation of the Fourth Amendment. Davenport v. Borough of Homestead, 870 F.3d 273, 278-79 (3d Cir. 2017). Accordingly, the Court shall not undertake an analysis under the Fifth or Fourteenth Amendments. See id. (finding "independent substantive due process analysis of an excessive force claim inappropriate where . . . the plaintiff's claim is covered by the Fourth Amendment").

[6] Plaintiff's NJCRA claim—the final claim in the Complaint—incorporates by reference all prior Counts. Plaintiff's Complaint does not specify which "official duty" Defendants "failed to adequately perform or negligently performed," nor does Plaintiff elaborate on the basis for this claim in his brief. At this stage in the litigation, the Court assumes Plaintiff's NJCRA claim asserts the same civil rights violation as his § 1983 count: use of excessive force.

[7] While this Court declined to apply qualified immunity at the motion to dismiss stage, see September 13, 2016 letter order, ECF No 12, that finding was not made on a full record, as presented here.

### a. Qualified Immunity

The doctrine of qualified immunity applies where a government actor's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted); See Kunkle v. Naugle, 660 F. App'x 132, 135 (3d Cir. 2016) (dismissing § 1983 and § 1985 claims pursuant to the doctrine of qualified immunity); Cluver v. Borough of Sayreville, 557 F. App'x 180, 182 (3d Cir. 2014) (affirming application of qualified immunity to NJCRA claim). Qualified immunity bars suit unless a plaintiff can show both that the facts alleged give rise to a constitutional violation and that the constitutional right at issue was "clearly established" when the violation occurred. See Pearson v. Callahan, 555 U.S. 223, 232, 238-42 (2009). Here, Plaintiff fails to establish either element.

### i. Constitutional Violation[8]

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. Plumhoff v. Rickard, 572 U.S. 765, 774 (2014). The standard is an objective one that considers the totality of the circumstances. See County of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017). "'[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). The United States Supreme Court and the Third Circuit have articulated the following non-exhaustive list of factors in evaluating the totality of the circumstances: the

---

[8] Plaintiff submits two expert reports on the issue of liability. However, since the dispositive issue of the constitutional violation is a question of law for the Court, the opinions expressed by the experts do not create an issue of fact that would preclude summary judgment.

"severity of the crime at issue"; "whether the suspect poses an immediate threat to the safety of the officers or others"; "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight"; "[whether] the physical force applied was of such an extent as to lead to injury"; "the possibility that the persons subject to the police action are themselves violent or dangerous"; "the duration of the action"; "whether the action takes place in the context of effecting an arrest"; "the possibility that the suspect may be armed"; "the number of persons with whom the police officers must contend at one time." See Wade v. Colaner, No. 06-3715, 2010 WL 5479629, at *9 (D.N.J. Dec. 28, 2010) (quoting Graham, 490 U.S. 386 and Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005)). The Supreme Court has consistently recognized that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kisela, 138 S. Ct. at 1152 (internal quotation marks omitted)).

Use of deadly force is justified where an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). The Supreme Court has acknowledged the constitutionality of using deadly force to subdue a fleeing suspect in a high-speed chase where the nature of the chase endangers other motorists. See Plumhoff, 572 U.S. at 776 (finding no Fourth Amendment violation where vehicle chase exceeded 100 miles per hour, lasted over five minutes, and came into close proximity of other motorists); Harris, 550 U.S. at 386 ("A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."). Although the Third Circuit has not addressed the constitutionality of using deadly force against a fleeing suspect to prevent him from breaking into a stranger's home, other Circuits

have recognized that a burglary in progress is an inherently dangerous crime. See Sandoval v. Las Vegas Metropolitan Police Dep't, 756 F.3d 1154, 1163 (9th Cir. 2014) (noting "burglary and attempted burglary are considered to carry an inherent risk of violence"); see also Deshotels v. Marshall, 454 F. App'x 262, 267 (5th Cir. 2011) (noting "burglary in progress" is "a crime normally and reasonably expected to involve a weapon"); United States v. Barnett, 505 F.3d 637, 640 (7th Cir. 2007) (same).

Based on the unique set of undisputed facts[9] in this case, the Court finds that no constitutional violation occurred. In a one-on-one encounter, Officer Laurie was faced with a fleeing suspect who repeatedly disregarded his commands. Moreover, Plaintiff fled from Officer Laurie twice after being seized. At various times during the pursuit, Officer Laurie yelled orders at Plaintiff, including to stop running, not to move, and to show his hands. Officer Laurie also pointed his firearm at Plaintiff when issuing some of these commands. Officer Laurie's actions and verbal orders made it abundantly clear that Plaintiff was not free to leave.

---

[9] There is a factual dispute as to whether or not Plaintiff possessed, or Laurie reasonably believed that Plaintiff possessed, a firearm when the shooting occurred. For the reasons expressed infra, the Court concludes that Defendants are entitled to qualified immunity even assuming Plaintiff was unarmed. Defendants argue that Plaintiff is collaterally estopped from denying that he had a firearm based on a factual finding contained in the Superior Court's suppression decision. Defs.' Br. at 22. The suppression opinion set forth thirty factual findings, including a finding that Laurie confirmed Plaintiff had a gun in his waistband during the initial stop. Id. at 12. The Court declines to apply the doctrine of collateral estoppel because the Superior Court's factual finding that Plaintiff possessed a gun was not essential to the Court's determination that suppression was warranted on the basis of the unlawful stop. See Bobby v. Bies, 556 U.S. 825, 834 (2009) ("If a judgment does not depend on a given determination, relitigation of that determination is not precluded."); SEC v. Teo, No. 04-1815, 2009 WL 1684467, at *23 (D.N.J. June 12, 2009) (finding no collateral estoppel on applicability of crime-fraud exception—an issue ruled upon by the district judge prior to entry of guilty plea—on grounds that "the factual findings of the application of the crime-fraud exception to [the parties'] communications . . . were not essential to the judgment of conviction"). In any event, the Court finds this fact to be immaterial.

Significantly, while still in pursuit, Officer Laurie saw Plaintiff run toward a private home, "ram[] his shoulder into [the door]," and "break[] the lock" to enter. After following Plaintiff through the breached door into a residential unit, Officer Laurie saw Plaintiff attempting to break another locked door, which he believed[10] led to additional apartment units. At that point, Officer Laurie made an on-the-scene decision to stop Plaintiff by shooting him. Under these circumstances, which were "tense, uncertain, and rapidly evolving," see Graham, 490 U.S. at 396-97, the Court is satisfied that the officer's conduct was reasonable.

Officer Laurie's decision was the type of "split-second judgment" that the United States Supreme Court has cautioned against second-guessing "with the 20/20 vision of hindsight." See Kisela, 138 S. Ct. at 1152. Had Officer Laurie waited until Plaintiff broke through the second residential door, the situation could have escalated. At that moment, while about to breach another locked door, Plaintiff posed an "immediate threat to the safety of the officer and others." By entering another apartment unit, Plaintiff could have gained access to weapons, or household items that could have been used as weapons. Plaintiff therefore posed a threat to others even if he was not armed prior to entry. Officer Laurie's actions were objectively reasonable under the facts that confronted him. He shot Plaintiff once in the leg, ordered him to stop, handcuffed him, and sent him to the hospital for medical treatment. Under the particularized circumstances of this case, the Court finds that Officer Laurie's use of force did not give rise to a constitutional violation.

---

[10] During the investigatory stop, Plaintiff told Laurie he was headed "home" to "Ludlow, right there on the corner house." Plaintiff's Counterstatement of Undisputed Material Facts ("PSOMF") ¶ 125. Plaintiff argues that this interaction creates a factual dispute. The Court disagrees. This conversation does not invalidate Laurie's reasonable belief that Plaintiff was attempting to break into someone else's house. Laurie witnessed Plaintiff force his way into the home by breaking the lock. Plaintiff was attempting to break through a second door when Laurie shot him. Based on the totality of the circumstances, the Court finds Laurie's belief that Plaintiff was breaking into a stranger's home to be reasonable.

### ii. Clearly Established Right

Even if a constitutional violation had occurred, Officer Laurie did not violate a clearly established right. In order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela, 138 S. Ct. at 1152. The contours of the right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Id. at 1153. Qualified immunity accordingly protects "all but the plainly incompetent or those who knowingly violate the law." Id. at 1152. The United States Supreme Court has repeatedly noted that "clearly established law should not be defined at a high level of generality" and instead requires precedent that is "particularized to the facts of the case." White, 137 S. Ct. at 552 (internal quotation marks omitted). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force" by providing an actor with notice that "a specific use of force is unlawful." Kisela, 138 S. Ct. at 1153 (internal quotation marks omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Id. at 1153 (internal quotation marks omitted). "Where constitutional guidelines seem inapplicable or too remote," it is improper for a court to deny qualified immunity and order that the case be tried "on the question of reasonableness." Id.

It is well-established that use of deadly force is justified only when an officer "has probable cause to believe that the suspect poses a threat of serious physical harm" to the officer or to others. Garner, 471 U.S. at 11. But the Supreme Court has explicitly held that the general principles articulated in Garner and its progeny are typically insufficient to give rise to a clearly established right. See, e.g., White, 137 S. Ct. at 552 (reiterating holding that "Garner and Graham do not by

themselves create clearly established law outside 'an obvious case'"). Plaintiff does not cite a single case with analogous facts to support the conclusion that Laurie's actions violated a clearly established right. And the Court is unaware of any precedent in this Circuit or elsewhere finding a constitutional violation when deadly force is used to prevent a suspect from breaking into a residence. To the contrary, numerous courts have noted that a burglary-in-progress is an inherently dangerous crime. See Sandoval, 756 F.3d at 1163 (noting "burglary and attempted burglary are considered to carry an inherent risk of violence"); see also Deshotels, 454 F. App'x 267 (noting "burglary in progress" is "a crime normally and reasonably expected to involve a weapon"); Barnett, 505 F.3d at 640 (same).

Thus, there is no established precedent which would have placed Officer Laurie on notice that his use of force under the circumstances—a chase, multiple unheeded orders to stop, forced entry into a residence, and an attempt to break into a connected residence—was a constitutional violation. These facts are markedly different from Garner. The Court therefore cannot conclude that this is "an obvious case" of excessive force such that Garner and Graham provide sufficient notice of a clearly established right. In the absence of precedent that is more "particularized to the facts of the case," see White, 137 S. Ct. at 552, the Court finds that Laurie did not violate a clearly established right.

Laurie is accordingly entitled to qualified immunity and summary judgment is granted as to Counts One, Four, and Seventeen.

**2. Against the City**

Plaintiff alleges that the City violated § 1983 by maintaining policies and practices that authorized Defendants to "use excessive force in the arrest of the person who fit a certain profile" and that such policies "encouraged and caused constitutional violations." Compl. at Count Three.

Plaintiff further alleges that the City violated § 1983 by failing to "adequately train, supervise, and/or control defendant officers." Id.

A municipality may be held liable for a § 1983 violation if the violation was "caused by action taken pursuant to a municipal policy or custom." Brown v. Commonwealth of Penn., Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). However, § 1983 liability under Monell requires an underlying constitutional violation. Ford v. County of Hudson, 729 F. App'x 188, 196 n.4 (3d Cir. 2018) (citing Brown, 318 F.3d at 482). Because the Court finds no constitutional violation, Plaintiff's Monell claim is dismissed and Defendants' motion for summary judgment is granted as to Counts Three and Five. Plaintiff's cross-motion is denied for the same reasons.

### B. State law tort claims

Plaintiff alleges that Laurie committed the torts of assault, battery, intentional and negligent infliction of emotional distress, negligence, and false arrest. Plaintiff alleges the same claims against the City under the doctrine of respondeat superior. Defendants argue that Plaintiff is collaterally estopped from asserting a false arrest claim on the basis of his guilty plea. Defendants further argue that the remaining claims are barred by the good faith immunity conferred by the New Jersey Tort Claims Act. The Court agrees and will dismiss all of the state law tort claims.

#### 1. Against Laurie

##### a. Good Faith Immunity

Under the New Jersey Tort Claims Act ("NJTCA"), "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. Immunity does not apply to willful misconduct, actions taken with actual malice, or claims of false imprisonment. See N.J.S.A. §§ 59:3-3, 59:3-14(a). Like federal qualified immunity, good faith

immunity under the NJTCA protects a public employee from suit when the actor "reasonably believed that his or her actions were lawful in light of clearly established laws." Lascurian v. City of Newark, 349 N.J. Super. 251, 287 (App. Div. 2002); see Alston v. City of Camden, 168 N.J. 170, 186-87 (2001) (explaining good faith immunity protects actions taken with "respect for basic, unquestioned constitutional rights" and noting that immunity is inapplicable where an official "knew or reasonably should have known" that his actions would violate a plaintiff's rights (internal quotation marks omitted)). A public employee bears the burden of pleading and proving immunity under the NJTCA. Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009). "Summary judgment is warranted and, indeed, desirable, as a matter of judicial economy" once a defendant has presented evidence that "would exclude any genuine dispute of fact as to the application of immunity." Id. (internal quotation marks omitted).

Plaintiff's tort claims for assault, battery, negligent and intentional infliction of emotional distress, and negligence all arise from the shooting. For the reasons expressed in III(A)(1), supra, Defendant Laurie is entitled to good faith immunity because his actions did not violate a clearly established right. The Court grants summary judgment in favor of Laurie as to Counts Six, Seven, Eight, Nine, Ten, and Eleven.

  b. **Estoppel**

The New Jersey Supreme Court has held that "probable cause is an absolute defense" to claims for false arrest and false imprisonment. Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000). Entry of a guilty plea establishes probable cause for an arrest and accordingly bars claims for false arrest. See Torres v. Borough of Barrington, No. 16-6134, 2017 WL 3189448, at *4 (D.N.J. July 27, 2017) (granting summary judgment on false arrest claims because of the Plaintiff's disorderly persons conviction); Perez v. City of Elizabeth, No. A-2932-14T2, 2016 WL

6134927, at *4 (N.J. Super. Ct. App. Div. Oct. 21, 2016) (affirming trial court's ruling that "guilty plea would bar [the plaintiff's] claims for false arrest and false imprisonment"); see also Obchinetz v. Maple Shade Township, No. A-4289-13T4, 2015 WL 3869711, at *4 (N.J. Super. Ct. App. Div. June 24, 2015) (finding guilty plea will "effectively waive[] any challenge as to probable cause for [an] arrest").

On November 16, 2015, Plaintiff pled guilty to a disorderly persons offense of obstruction of justice in connection with the events that occurred on November 6, 2013. Plea Tr. at 5:17-6:18. Plaintiff's false arrest claim is accordingly barred by his guilty plea. Defendant Laurie is entitled to summary judgment on Count Thirteen.

### 2. Against the City

The NJTCA provides that "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. § 59:2-2(b). Because Laurie is not liable for the reasons expressed above, the City is also not liable for the tort claims asserted against it. Accordingly, the City is entitled to summary judgment on Counts Fourteen and Sixteen.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 117, is **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment, ECF No. 123 is **DENIED.**

Dated: May 31, 2019

                                              */s Madeline Cox Arleo*
                                              Hon. Madeline Cox Arleo
                                              UNITED STATES DISTRICT JUDGE